1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

JOHN J. FALCOCCHIA and
10  RACHAEL D. FALCOCCHIA,

                              NO. CIV. S-09-2700 LKK/GGH
11          Plaintiffs,

12      v.
                                    O R D E R
13  SAXON MORTGAGE, INC., et al.,

14          Defendants.

15  _____/

16      This case involves the foreclosure of plaintiffs' mortgage.

17  Their First Amended Complaint ("FAC") names enumerates nine causes

18  of action.   Defendants Saxon Mortgage, Inc., Saxon Mortgage

19  Services, Inc., and Deutsche Bank Trust Company Americas move to

20  dismiss all claims against them.[1]   The court concluded that oral

21  ────────────────────

22          [1] The complaint names a fourth defendant, Old Republic Default
    Management Services.   Before this case was removed from state
23  court, Old Republic Default Management Services filed a declaration
    of non-monetary status.   Notice of Removal, Ex. 3.   The parties
24  stipulate that pursuant to this state court designation, Old
    Republic is merely a nominal party in this action who is not
25  subject to liability.   See Amaro v. Option One Mortgage Corp., No.
    EDCV 08-1498, 2009 U.S. Dist. LEXIS 2855, *3, 2009 WL 103302,*1
26  (C.D. Cal. Jan. 14, 2009). Given the timing and stipulation, I need
    not consider this issue further.

                              1

argument was not necessary in this matter, and decides the motion on the papers.  For the reasons stated below, the motion to dismiss is granted in part.

## I. BACKGROUND

### A.   Refinancing[2]

On or about July 12, 2006, Greg Roh (who is not party to this suit) approached plaintiffs soliciting refinancing of a loan currently secured by plaintiffs' property in Yuba City, California.  FAC ¶ 13.   Roh, a mortgage broker, informed plaintiffs that a mortgage from defendants Saxon Mortgage and Saxon Mortgage Services would give them the "best deal" and "best interest rates" available on the market.   Id.

On July 13, 2006, in a loan brokered by Roh, plaintiffs borrowed $408,000 from Saxon Mortgage and Saxon Mortgage Services to refinance plaintiffs' existing home loan.[3] Defendants' Request for Judicial Notice ("Defs.' RFJN") Ex. 1; FAC ¶ 13.  The new loan was secured by a deed of trust on the Yuba City property, which was recorded in Sutter County, California.  FAC ¶¶ 15-16.  The deed of

---

[2] These facts are taken from the allegations in the FAC unless otherwise specified.   The allegations are taken as true for purposes of this motion only.

[3] The FAC specifically alleges that this sum was borrowed from both Saxon Mortgage and Saxon Mortgage Services.   FAC ¶ 13.   It appears unlikely that this is actually the case.   Defendants have not provided the promissory note.  The deed of trust indicates that Saxon Mortgage is the sole lender.   Defs.' RFJN Ex. 1, 1.   It is unclear whether, at this stage, the judicially noticeable deed of trust is sufficient to refute plaintiffs' allegation that Saxon Mortgage Services was also a lender.   In any event, resolution of this issue is not necessary to this motion.

trust identifies the plaintiffs as borrowers, Saxon Mortgage as lender, and First American Title as trustee.  Defs.' RFJN Ex. 1. It appears that Saxon Mortgage Services was the servicer of the loan.

Plaintiffs allege several defects with the initial transaction.  First, contrary to Roh's representations as broker, the loan did not provide the best rates or best deal.  FAC ¶ 13. Roh allegedly acted as agent for the Saxon defendants, and these defendants should have known that Roh's representations were false.[4]  Id.  Plaintiffs further argue that the loan transaction was procedurally defective, in that plaintiffs did not receive (1) signed loan documents at the time of closing or within a reasonable amount of time after signing, (2) disclosure of finance charges and loan interest rate prior to closing, and (3) a completed notice of right to cancel indicating the date that the right expires.  FAC ¶ 35.

**B.   Events Subsequent to Refinancing**

Nine months after the initial transaction, on April 18, 2007, Saxon Mortgage assigned its beneficial interest under the promissory note and deed of trust to defendant Deutsche Bank Trust Company Americas.  Defs.' RFJN Ex. 3 (recorded notice of assignment).  Pursuant to this assignment, Saxon Mortgage Servicing remained the "attorney-in-fact" for the beneficiary, which the

---

[4] The court notes that the existence of an agency relationship is a legal conclusion.  The court therefore does not assume this allegation to be true.

3

1  court understands to mean that Saxon Mortgage Servicing continued
2  to service the loan.  Id.

3       Plaintiffs then defaulted on the loan.  Defendants twice
4  issued and then rescinded a notice of default and notice of trustee
5  sale.  Defs.' RFJN Ex. 2, 4-8.  On May 13, 2008, defendant Old
6  Republic Default Management Services, who had not previously been
7  involved in the loan, issued a third notice of default and election
8  to sell.  Id. Ex. 9.  Old Republic purported to issue this document
9  "as agent for the Beneficiary."  Id.  A year later, on May 14,
10 2009, Old Republic recorded a document substituting Old Republic
11 for First American Title as trustee.  Old Republic also recorded
12 a third notice of trustee's sale.  Defs.' RFJN Ex. 10, 11.  The
13 trustee's sale was set for June 2, 2009.  Id. Ex. 11.

14      Plaintiffs argue these final three documents (notice of
15 default, trustee sale, and substitution) should have been mailed
16 to plaintiffs' "legal mailing address," but that they were not,
17 despite defendants' knowledge of this address.  FAC ¶¶ 18, 19, 22.
18 Plaintiffs further argue that the notice of trustee's sale and
19 substitution of trustee were not certified as true and correct
20 copies of the originals and did not bear Sutter County instrument
21 numbers identifying them as official records.  FAC ¶ 21.

22      Plaintiffs then sent letters to defendants stating plaintiffs'
23 intent to file a temporary restraining order to enjoin the
24 foreclosure sale, demanding immediate cancellation of the
25 foreclosure sale, and demanding that defendant Old Republic Default
26 Management Services immediately stay all further action and comply

4

1  with California Civil Code section 2924.  FAC ¶ 24.  Defendants did

2  not respond.

3      Plaintiffs also sent a separate letter to Saxon Mortgage and

4  Saxon Mortgage Services which demanded cancellation of the

5  foreclosure sale and rescission of the loan for violations of the

6  Truth in Lending Act ("TILA").  FAC ¶ 25.  Plaintiffs contend that

7  this letter constituted a qualified written request under the Real

8  Estate Settlement Procedures Act ("RESPA").  Saxon Mortgage and

9  Saxon Mortgage Services did not respond.  FAC ¶ 26.

10                          **II. STANDARD**

11  **A.   Standard for a Motion to Dismiss**

12      A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

13  compliance with the pleading requirements provided by the Federal

14  Rules.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a

15  "short and plain statement of the claim showing that the pleader

16  is entitled to relief."  The complaint must give defendant "fair

17  notice of what the claim is and the grounds upon which it rests."

18  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal

19  quotation and modification omitted).  To meet this requirement, the

20  complaint must be supported by factual allegations.  Ashcroft v.

21  Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).  "While legal

22  conclusions can provide the framework of a complaint," neither

23  legal conclusions nor conclusory statements are themselves

24  sufficient, and such statements are not entitled to a presumption

25  of truth.  Id. at 1949-50.  Iqbal and Twombly therefore prescribe

26  a two step process for evaluation of motions to dismiss.  The court

first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

**A.    Failure to Allege Ability to Make Tender**

Defendants first argue that all of plaintiffs' claims are barred by plaintiffs' failure to allege their ability to tender the loan proceeds. Defendants assert that Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101 (1996), requires a valid tender of payment to bring any claim that arises from a foreclosure sale.

1       As an initial matter, state law cannot provide a defense to
2  federal claims.  Haywood v. Drown, ___ U.S. ___, ___, 129 S. Ct.
3  2108, 2130-31 (2009).  Defendants do not argue or cite to any
4  authority discussing a federal tender requirement, or tender as
5  a prerequisite for plaintiffs' TILA and RESPA.  Although this
6  court has discussed these requirements elsewhere, the court
7  declines to do so sua sponte here.
8       Even as to the state law claims, most of these claims fail
9  for reasons unrelated to tender, as explained below.  The sole
10 surviving state law claim is for violation of California's
11 unfair competition law, premised on conduct that was unlawful in
12 that it violated RESPA.  The RESPA claim is for failure to
13 respond to a qualified written request.  It is not clear whether
14 this claim is "for irregularity in the [foreclosure] sale
15 procedure" and thus within the scope of Abdallah.  Abdallah, 43
16 Cal. App. 4th at 1109.  Defendants argue that all of plaintiffs'
17 claims are "'implicitly integrated'" into the foreclosure
18 process, in that none "would have any relevance if it weren't
19 for the pending foreclosure."  Defs.' Reply at 3 (quoting
20 Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 579
21 (1984)).  Assuming for purposes of this motion that defendants'
22 interpretation of "implicitly integrated" is correct,
23 defendants' argument fails because the RESPA claim and the
24 derivative unfair competition claim could both be brought in the
25 absence of a threatened or actual foreclosure.
26 ////

7

**B.    Truth in Lending Act**

Plaintiffs argue that Saxon Mortgage and Saxon Mortgage Services failed to make the disclosures required by TILA at the time of the initial transaction, and that plaintiffs are entitled to civil damages and rescission of the loan as a result.  Defendants do not address the substance of this argument, instead arguing that the TILA claims are time barred. TILA provides a one year statute of limitations for civil damages claims and a three year statute of repose for rescission claims.  15 U.S.C. §§ 1635(f) and 1640(e).  Both of these periods commenced at the time the loan was entered, on or around July 12, 2006.  King v. California, 784 F.2d 910, 914 (9th Cir. 1986).  These periods would normally have expired on July 12, 2007 and July 12, 2009, respectively, whereas plaintiffs first alleged TILA violations in the FAC filed on August 28, 2009. The court considers the arguments regarding each claim in turn.

**1.    Civil Damages Claim**

Plaintiffs argue that their civil damages claim is timely because of equitable tolling, in that plaintiffs did not have "reasonable opportunity to discover" the facts underlying the claim at an earlier time.  Equitable tolling is available under TILA's limitations period for civil damages.  King, 784 F.2d at 915.  Here, however, plaintiffs have not alleged facts showing that they are potentially entitled to equitable tolling.

Because the statute of limitations is an affirmative defense, its invocation in the context of a motion to dismiss

1  raises specific concerns, especially when the plaintiffs raise

2  an equitable tolling argument.  Huynh v. Chase Manhattan Bank,

3  465 F.3d 992, 1003-04 (9th Cir. 2006) (citing Supermail Cargo,

4  Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995)).  A

5  motion to dismiss on statute of limitations grounds cannot be

6  granted if "the complaint, liberally construed in light of our

7  'notice pleading' system, adequately alleges facts showing the

8  potential applicability of the equitable tolling doctrine."

9  Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir.

10 1993); see also Morales v. City of Los Angeles, 214 F.3d 1151,

11 1153, 1155 (9th Cir. 2000).  Because equitable tolling turns on

12 matters outside of the pleadings, the Supreme Court's recent

13 decisions in Twombly and Iqbal, which concerned the requirements

14 of Fed. R. Civ. P. 8, do not provide reason to revisit this

15 rule.

16     The Ninth Circuit has held that plaintiffs failed to show

17 the potential applicability of the equitable tolling doctrine

18 where "it [was] clear that [plaintiffs] have had the information

19 necessary to bring suit . . . for many years," and plaintiffs

20 did not argue that "extraordinary circumstances beyond [their]

21 control made it impossible to file the claims on time."  Huynh,

22 465 F.3d at 1004.  In this case, at the time of the transaction,

23 plaintiffs knew what disclosures were and were not made.  FAC ¶

24 91.  Plaintiffs also knew the terms of the transaction as

25 specified in these disclosures.  Id.  Plaintiffs have not

26 alleged that any of this information was inaccurate, or that

1  plaintiffs were in any other way ignorant of the factual basis

2  of their TILA damages claim at the time that claim accrued.[5]

3  C.f. Supermail Cargo, 68 F.3d at 1208; see also Cervantes, 5

4  F.3d at 1277.  Because plaintiffs' claim is based on failure to

5  disclose information, plaintiffs were aware of the claim's basis

6  when they knew that information was not disclosed.  Plaintiffs

7  therefore have not demonstrated a possibility of tolling, and

8  their TILA civil damages claim is time barred.

9      **2.   Rescission Claim**

10      Unlike TILA's one year period for civil damages claims, the

11  three year period for TILA rescission claims is an "absolute"

12  statute of repose that cannot be tolled.  Miguel v. Country

13  Funding Corp, 309 F.3d 1161, 1164 (9th Cir. 2002) (King, 784

14  F.2d at 913); see also Beach v. Ocwen Fed. Bank, 523 U.S. 410,

15  412 (1998) ("[Section] 1635(f) completely extinguishes the right

16  of rescission at the end of the 3-year period.").  This period

17  began on or around July 12, 2006, and expired around July 12,

18  2009.

19      Plaintiffs raise two further arguments as to why their TILA

20  rescission claim is timely.  First, plaintiffs argue that they

21  sought rescission in the state court complaint filed on June 1,

22  2009.  The court has been unable to find anything in the initial

23

24      [5] In opposing this motion, plaintiffs argue that defendants
    misrepresented facts, citing to paragraph 38 of the FAC.  Neither
25  plaintiffs' opposition nor this paragraph of the FAC provide any
    indication as to what facts were misrepresented.  As such, this
26  allegation is conclusory, and is disregarded for purposes of the
    instant motion.

1  complaint, application, or attached affidavits suggesting that

2  plaintiffs sought rescission at that time.  The initial filing

3  contended that the notice of default and notice of trustee's

4  sale were procedurally defective, but plaintiffs made no

5  contentions regarding the initial transaction, nor did

6  plaintiffs argue that they were entitled to rescind the entire

7  loan.  Accordingly, it is clear that plaintiffs did not seek to

8  rescind through the initial state complaint.

9       Plaintiffs' second argument is that they sent a letter

10  demanding rescission before the right expired, separate from any

11  judicial proceeding.  FAC ¶ 25.  Plaintiffs have not indicated

12  when this letter was sent.[6]  For purposes of this motion, the

13  court assumes that the letter was sent prior to expiration of

14  the right to rescind, although the court does not decide whether

15  the Ninth Circuit's limitations jurisprudence or the liberal

16  pleading standards compel such an assumption.  Notification of

17  intent to exercise the right to rescind is a step of the

18  rescission process.  15 U.S.C. § 1635, 12 C.F.R. § 226.23(a)(2).

19  Nonetheless, courts have divided as to whether timely initiation

20  of the rescission process entitles plaintiffs to bring a

21  rescission action where the complaint itself is filed outside

22  the three year period.

23

24       [6] The court may infer that the letter regarding intent to file
a temporary restraining order was sent before the application for
25  a TRO was filed, therefore before June 1, 2009.  However,
plaintiffs' allegations indicate that the letter demanding
26  rescission was a separate document.  FAC ¶¶ 24, 25.

1    The Ninth Circuit case most closely on point is Miguel, 309

2  F.3d 1161.  In Miguel, the borrower sent notice of intent to

3  rescind to the wrong entity, and then filed a complaint seeking

4  rescission from that entity, both within the three year period.

5  After the three year period expired, the borrower moved to amend

6  the complaint to name the proper entity, arguing that the

7  amended complaint should relate back under Fed. R. Civ. P. 15(c)

8  and therefore be timely.  Miguel held that because plaintiff

9  "did not attempt to rescind against the proper entity within the

10  three-year limitation period, her right to rescind expired" at

11  the end of that time.  309 F.3d at 1164-65.  Because the three

12  year period is jurisdictional, Rule 15(c) could not be used to

13  treat the corrected complaint as relating back and therefore

14  timely.  Id. at 1165.  "[Section] 1635(f) is a statute of

15  repose, depriving the courts of subject matter jurisdiction when

16  a § 1635 claim is brought outside the three-year limitation

17  period."  Id. at 1164.

18    Several courts have interpreted Miguel as barring claims

19  for rescission on facts identical in pertinent regard to those

20  in this case.  Ramos v. CitiMortgage, Inc., 2009 U.S. Dist.

21  LEXIS 956 (E.D. Cal. Jan. 7, 2009) (Shubb, J.), Caligiuri v.

22  Columbia River Bank Mortg. Group, No. Civ. 07-3003-PA, 2007 U.S.

23  Dist. LEXIS 39264, 2007 WL 1560623 at *5 (D.Or. 2007), Cazares

24  v. Household Fin. Corp., No. CV 04-6887, 2005 U.S. Dist. LEXIS

25  39222, at *24-25 (C.D. Cal. July 26, 2005).  In particular,

26  these cases relied on Miguel's statement that "section 1635(f)

1   represents an 'absolute limitation on rescission actions' which

2   bars any claims filed more than three years after the

3   consummation of the transaction." Miguel, 309 F.3d at 1164

4   (quoting King, 784 F.2d at 913); see also Beach, 523 U.S. at

5   412. These cases held that although the borrower was barred from

6   bringing a rescission claim based on the initial misconduct

7   giving rise to a right to rescind, the borrower could bring a

8   civil damages action predicated on the creditor's subsequent

9   failure to respond to the notice of rescission.[7]  Plaintiff has

10  not argued that such a claim is present here.

11       Another court of this district has reached the opposite

12  conclusion after extensive discussion.  Santos v. Countrywide

13  Home Loans, No. 09-CV-00912, 2009 U.S. Dist. LEXIS 71736, *6-14

14  (E.D. Cal. Aug. 14, 2009) (Ishii, J.).  Santos interpreted

15  Miguel as confined to its facts, where there was no timely and

16  proper notice of rescission, and thus inapplicable to a case

17  such as this one.  Although Santos accurately characterized the

18  facts in Miguel, it appears to this court that the statements

19  quoted above explicitly sweeps broader than the facts of that

20  case.  Insofar as Miguel discussed the one year limitations

21  period for actions arising from failure to respond to a notice

22  of rescission, this limitations period applies to civil damages

23  actions brought under 15 U.S.C. section 1640, and not to actions

24  for rescission under the separate framework of section 1635.  To

25  _____

26       [7] It is not clear what would be the measure of damages for
     such an action.

1  the extent that <u>Santos</u> relied on authority from other circuits,

2  or agued that <u>Miguel</u> itself was not compelled by the Supreme

3  Court's decision in <u>Beach</u>, the court does not find <u>Santos</u>

4  persuasive.

5      Accordingly, plaintiffs did not file a claim seeking

6  rescission within the three year period, this period cannot be

7  tolled, and plaintiffs' allegation that they sent a notice of

8  rescission within the three year period is irrelevant.  The

9  motion to dismiss is therefore granted as to plaintiffs' TILA

10 claim for rescission.

11 **C.    Real Estate Settlement Procedures Act**

12     Plaintiffs claim that Saxon Mortgage and Saxon Mortgage

13 Services violated RESPA by failing to respond to a qualified

14 written request as required by 12 U.S.C. section 2605(e)(2).

15 Defendants argue that this claim is time barred by 12 U.S.C. §

16 2614, which creates a three year statute of limitations for

17 violations of section 2605.

18     Defendants appear to argue that this limitation period

19 began to run from the completion of the transaction.  Because

20 the conduct complained of is the failure to respond to the

21 alleged qualified written request, the claim accrued, and the

22 claim began to run, at the time of that failure.

23     Plaintiffs do not allege when this was, or when their

24 qualified written request was sent.  This court has previously

25 held that so long as the complaint provides some notice as to

26 when the complained-of conduct occurred specific allegations of

1  time are not required.  Baldain v. Am. Home Mortg. Servicing,

2  Inc., No. CIV. S-09-0931, 2010 U.S. Dist. LEXIS 5671, *14 (E.D.

3  Cal. Jan. 5, 2010), see also Dickens v. District of Columbia,

4  502 F. Supp. 2d 90, 94 (D.D.C. 2007), Castillo v. Norton, 219

5  F.R.D. 155, 162 (D. Ariz. 2003), Famolare, Inc. v. Edison Bros.

6  Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981), Supreme

7  Wine Co. v. Distributors of New England, Inc., 198 F. Supp. 318,

8  320 (D. Mass. 1961), Kuenzell v. United States, 20 F.R.D. 96, 99

9  (N.D. Cal. 1957).  Here, "[w]hile the[] allegations do not

10  conclusively demonstrate the applicability or non-applicability

11  of the statute of limitations, they provide sufficient notice to

12  defendants that the statute of limitations may be at issue, and

13  thereby allow defendants to formulate an answer."  Baldain, 2010

14  U.S. Dist. LEXIS 5671, *16.  Because a motion to dismiss may be

15  granted on statute of limitations grounds only when there is no

16  possibility that the claim is timely, defendants' motion must be

17  denied.

18  **D.  Negligence**

19      Plaintiffs' second cause of action is for negligence as to

20  Saxon Mortgage and Saxon Mortgage Services.  Under California

21  law, the elements of a claim for negligence are that (1)

22  defendant had a legal duty to plaintiff, (2) defendant breached

23  this duty, (3) defendant was the proximate and legal cause of

24  plaintiff's injury, and (4) plaintiff suffered damage.  See Cal.

25  Civ. Code § 1714; Ladd v. County of San Mateo, 12 Cal. 4th 913,

26  917 (1996).  Plaintiffs allege that defendants were negligent in

1   (1) directing plaintiffs into a loan they were not qualified

2   for, FAC ¶¶ 47-48, and (2) "[taking] payments to which they were

3   not entitled, charg[ing] fees they were not entitled to charge

4   and [making] or otherwise authoriz[ing] reporting to various

5   credit bureaus wrongfully," FAC ¶ 49.[8]

6        As to offering a loan plaintiffs were not qualified for, a

7   lender "owes no duty of care to the [borrower] in approving [a]

8   loan." Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980).

9   Insofar as Saxon Mortgage Services acted as a servicer rather

10  than a lender, it appears that servicers have no connection with

11  the approval of the loan.  If, contrary to this appearance,

12  Saxon Mortgage Servicing did participate in the approval of the

13  loan in its role as a servicer, this specific holding from

14  Wagner is equally applicable to loan servicers.  More broadly,

15  plaintiffs have not alleged that the Saxon defendants acted as

16  other than a lender or a servicer.  See also Champlaie v. BAC

17  Home Loans Servicing, LP, No. S-09-1316, 2009 U.S. Dist. LEXIS

18  102285, *19, 2009 WL 3429622, *24 (E.D. Cal. Oct. 22, 2009)

19       As to the remaining allegations, assuming without deciding

20  _____

21       [8] Plaintiffs' opposition memorandum adds an additional basis
    for negligence, arguing that defendants were negligent in failing
22  to properly disclose and explain the loan's terms.  Pls.' Opp'n at
    9-10.  The FAC alleges that this conduct was a breach of contract
23  and a violation of TILA, but provides no notice to defendants of
    the claim that these duties sound in negligence.  Thus, while this
24  court has previously held that this type of wrongdoing might sound
    in negligence, plaintiffs have not stated such a claim here.
25  Champlaie, 2009 WL 3429622, *24.  Plaintiffs may raise this theory
    of liability in an amended complaint.  Until that time, the court
26  expresses no opinion as to whether such a claim may be properly
    brought in this case.

that defendants had a duty of care sounding in negligence regarding servicing the loan, plaintiffs have not alleged a breach of this duty.  To the extent that plaintiffs offer any explanation as to why these acts were wrongful, plaintiffs argue that defendants were not entitled to these fees because of the defects with the notices and the loan origination.  These defects, however, would at most allow plaintiffs to rescind or void the loan.  Because the loan had not been rescinded at the time of the alleged acts, and absent any other allegation of wrongdoing, defendants' actions were permitted.  Thus, assuming that a duty existed as to servicing the loan, plaintiffs have not alleged a breach of this duty.

**E.    Violations of California's Rosenthal Fair Debt Collection Practices Act**

Plaintiffs' eighth cause of action is for violation of California's Rosenthal Act by Saxon Mortgage and Saxon Mortgage Services.  Plaintiffs stated their non-opposition to dismissal of this claim, and plaintiffs have not requested leave to amend this claim.  Plaintiffs' eighth cause of action is therefore dismissed with prejudice.

**F.    Violations of California Civil Code §§ 2924b and 2924f[9]**

Plaintiffs' fifth cause of action argues that all

_____

[9] Plaintiffs' complaint cites California Civil Code sections 2924(b) and (f), rather than 2924b and 2924f.  Section 2924(b) is a provision providing a species of good faith immunity for the trustee, and section 2924(f) is a sunset clause.  Neither section imposes obligations or may constitute a basis for liability.  The court interprets plaintiffs' complaint as referring to 2924b and 2924f.

1    defendants violated California Civil Code sections 2924b and

2    2924f by failing to mail documents to the proper address and by

3    failing to certify these documents as official copies.

4        Section 2924b(b)(1) requires a party authorized to record a

5    notice of default to send by certified or registered mail a copy

6    of the notice of default to "each trustor or mortgagor at his or

7    her last known address if different from the address specified

8    in the deed of trust or mortgage with power of sale."  Although

9    plaintiffs allege that notice was not sent to the proper

10   address, plaintiffs have not alleged that they failed to receive

11   any of the challenged notices, or even that receipt of these

12   notices was delayed.  It appears that any violation of this

13   provision was therefore harmless.  Plaintiffs' sole argument on

14   the issue is the assertion that: "Even assuming, arguendo, that

15   Plaintiffs received notice of the scheduled foreclosure sale,

16   this assumption is not sufficient to invalidate the intent of

17   the statutory protections behind CA Civil Code Sec. 2924 (b) and

18   2924 (f) and defendants requisite statutory duty of providing

19   adequate notice. [sic]"  Plaintiffs' Opposition to Motion to

20   Dismiss 16.  Absent any citation to authority, evidence of

21   legislative intent, or evidence of actual harm, the court

22   concludes that a harmless violation of this section is not

23   actionable.

24       Plaintiffs separately argue that the notices were improper

25   because they were not certified and because they lacked a

26   "Sutter county instrument number."  It does not appear that the

statutes referred to by plaintiffs impose such a requirement, and plaintiffs have not argued that the notices violate the requirements actually imposed by the statutes.  Each notice document bears a serial number at the top, in the same field as a bar code, time stamp, and the name of the county recorder. California Civil Code sections 2924b(a) provides that a notice must contain either "the book and page where the deed of trust or mortgage is recorded," or a recorder's number.  There is no requirement of a "county instrument number."  California Civil Code section 2924f is relevant only insofar as it requires the notice of sale to satisfy California Government Code section 6043.  Section 6043 imposes no requirements regarding certification or placement of a recorder's number.  Plaintiffs have not argued that any of these specific requirements were violated, and plaintiffs have not cited any authority imposing the requirements alleged in the complaint.  This claim is dismissed.

**G.    Wrongful Foreclosure**

Plaintiffs also bring a claim for wrongful foreclosure against Saxon Mortgage and Saxon Mortgage Services.  This claim is based on the allegation that neither defendant possesses the promissory note, FAC ¶¶ 70-72, that the notice of default violated California Civil Code section 2923.5(b), FAC ¶ 73, that defendants violated RESPA, FAC ¶ 74, and that defendants violated requirements imposed by the Troubled Asset Relief Program ("TARP") and the Emergency Economic Stabilization Act of

1  2008 ("EESA"), FAC ¶¶ 76-69.  Dismissal is appropriate as to

2  each of these arguments.

3      First, plaintiffs concede the invalidity of their "possess

4  the note" argument.  See also Champlaie, 2009 WL 3429622 at *13.

5      Second, the notice of default was recorded on May 18, 2008,

6  whereas Civil Code section 2923.5(b) did not become effective

7  until September 6, 2008.  Plaintiff has not offered any argument

8  as to why these requirements should apply retroactively, and the

9  court is not aware of any such argument.

10     Third, although the court finds that plaintiffs have stated

11 a claim under section 5 of RESPA, 12 U.S.C. § 2605, this claim

12 does not provide a basis for injunctive relief. 12 U.S.C. §

13 2605(f)(1).  The RESPA claim therefore cannot invalidate a

14 foreclosure or render the foreclosure wrongful.  Amodo v. Homeq

15 Servicing Corp., No. CIV. S-10-177, 2010 WL 347730, *2 (E.D.

16 Cal. Jan. 22, 2010).

17     Fourth and finally, plaintiffs argue that defendants were

18 obliged to "participate in mortgage foreclosure mitigation

19 programs consistent with guidelines the Treasury released as

20 part of its Making Home Affordable" program.  FAC ¶ 76.

21 Plaintiffs argue that defendants were subject to these

22 guidelines under the TARP and EESA because defendants received

23 federal funds.  Plaintiffs assert that for mortgages subject to

24 these guidelines, lenders must "'temporarily suspend[] [any

25 foreclosure action] during the trial period, or while borrowers

26 are considered for alternative foreclosure prevention options.'"

1   FAC ¶ 78.  Although plaintiffs do not cite these guidelines in

2   either their complaint or their oppositions, plaintiffs

3   apparently refer to the Treasury Department guidelines

4   promulgated on March 4, 2009.[10]

5       Defendants argue that this they have complied with these

6   guidelines because the guidelines only apply to homes that are

7   the borrowers' primary residence, and because defendants

8   actually suspended the foreclosure process to renegotiate the

9   loan.[11]  Here, plaintiffs' allegation that the subject property

10  is not their "legal mailing address" is implicitly based on the

11  theory that plaintiffs do not reside at the property.

12  Plaintiffs have not sought to refute this implication, or to

13  otherwise respond to this argument.

14      Because each theory offered by plaintiffs in support of

15  their wrongful foreclosure claim fails, the court dismisses this

16  claim.  Dismissal is without prejudice, and plaintiffs are

17  granted leave to amend the deficiencies identified above.

18  ////

19  _____

20      [10] These guidelines were promulgated pursuant to the authority
    provided the EESA section 109, codified at 12 U.S.C. § 5219.  At
21  the time of this writing, these guidelines were available at
    http://www.ustreas.gov/press/reports/
22  modification_program_guidelines.pdf.  The language quoted by
    plaintiffs appears on page 3.
23
        [11] In their reply brief, defendants also argue that these
24  guidelines are inapplicable because (1) the subject loan is not
    owned by Fannie Mae or Freddie Mac, (2) the loan is a voluntary
25  program, and (3) the guidelines do not provide a private right of
    action.  Because these arguments were not raised in defendants'
26  initial memorandum, the court disregards them.

**H.    Contract Claims**

The FAC alleges a claim for breach of oral contract as to Saxon Mortgage and Saxon Mortgage Services and a claim for breach of the implied covenant of good faith and fair dealing as to all defendants (plaintiffs' first and third claims, respectively).  Plaintiffs concede that the oral contract claim must be dismissed, but plaintiffs oppose dismissal of the good faith and fair dealing claim.

Under California law, every contract carries with it an implied covenant of good faith and fair dealing.  <u>Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.</u>, 2 Cal. 4th 342, 371 (1992).  This duty requires contracting parties to exercise discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting.  <u>Id.</u> at 372-73.  A party breaches this duty when it acts in a way that deprives another contracting party of benefits conferred by the contract.

The FAC roots plaintiffs' good faith claim in "aforesaid contract."  FAC ¶ 52.  The only contract identified by the complaint, however, is the alleged oral contract, which plaintiffs concede is unenforceable.  Plaintiffs implicitly concede that this defeats the claim for good faith, offering no argument in support of this claim and instead merely requesting leave to amend.  Plaintiffs' good faith claim is therefore dismissed without prejudice.

////

1  **I.    Violations of California Business and Professions Code Sec.**
2  **17200**

3       California's Unfair Competition Law, Cal. Bus. & Prof. Code
4  § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent"
5  business acts and practices.  Plaintiffs' sole allegation
6  specifying the conduct underlying the UCL claim is that
7  "[d]efendants committed unlawful, unfair, and/or fraudulent
8  business practices, as defined by California Business and
9  Professions Code Sec. 17200."  FAC ¶ 57.

10      The FAC therefore fails to provide notice of the basis for
11 any claim arising out of unfair or fraudulent business
12 practices.
13 Plaintiffs' UCL claim must proceed, if at all, on the theory
14 that defendants acted unlawfully.  As discussed elsewhere,
15 plaintiffs have adequately alleged unlawful acts in that the
16 Saxon defendants violated RESPA.  These allegations identify
17 predicate acts supporting a UCL claim.

18      Plaintiffs' UCL claim is therefore dismissed as to Deutsche
19 Bank Trust Company Americas, and as to the Saxon defendants
20 insofar as the claim is predicated upon unfair or fraudulent
21 conduct or unlawful conduct other than a violation of RESPA.

22                        **IV. CONCLUSION**

23      For the reasons stated above, defendants' motion to dismiss,
24 Dkt. No. 6, is GRANTED IN PART.

25      The court DENIES the motion as to the following claims:

26      1.   Fourth Claim, under the UCL, as to Saxon Mortgage, Inc.

23

1        and Saxon Mortgage Services, Inc., insofar as this
2        claim is predicated upon a violation of RESPA.
3   2.   Ninth Claim, for violation of RESPA, as to Saxon
4        Mortgage, Inc. and Saxon Mortgage Services, Inc.
5   The court GRANTS the remainder of the motion.  Plaintiffs
6 agreed to dismiss their Rosenthal Act claim without requesting
7 leave to amend, and this claim is therefore dismissed with
8 prejudice.  Plaintiffs' remaining claims are dismissed without
9 prejudice.  Plaintiffs are granted twenty-one (21) days from the
10 date of this order to file an amended complaint.
11   IT IS SO ORDERED.
12   DATED:  February 12, 2010.
13
14
15                    _____
                      LAWRENCE K. KARLTON
16                    SENIOR JUDGE
                      UNITED STATES DISTRICT COURT
17
18
19
20
21
22
23
24
25
26