UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN J. FALCOCCHIA and
RACHAEL D. FALCOCCHIA,

                    NO. CIV. S-09-2700 LKK/GGH

      Plaintiffs,

   v.

                    O R D E R

SAXON MORTGAGE, INC., et al.,

      Defendants.

_____/

    This case involves plaintiffs' mortgage. In a prior order, the court largely granted a motion to dismiss brought by defendants Saxon Mortgage, Inc., Saxon Mortgage Services, Inc., and Deutsche Bank Trust Company Americas.  Plaintiffs were granted leave to amend and filed an amended complaint.  Defendants have filed a renewed motion to dismiss, primarily arguing that plaintiffs have failed to cure the previously identified deficiencies.  As explained below, the court largely agrees, though on more than one occasion, defendant failed to raise the court's previous determination.

////

1

### I. Standard for a Motion to Dismiss

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).  To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  Id. at 1949-50.  Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for

2

1   the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The

2   plausibility standard is not akin to a 'probability requirement,'

3   but it asks for more than a sheer possibility that a defendant has

4   acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A

5   complaint may fail to show a right to relief either by lacking a

6   cognizable legal theory or by lacking sufficient facts alleged

7   under a cognizable legal theory. Balistreri v. Pacifica Police

8   Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

9        Here, defendants ask the court to look beyond the complaint's

10  allegations and consider various exhibits. A court may consider

11  judicially noticeable evidence and "documents whose contents are

12  alleged in a complaint and whose authenticity no party questions,

13  but which are not physically attached to the pleading" without

14  transforming a motion to dismiss into a motion for summary

15  judgment. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994),

16  overruled on other grounds by Galbraith v. County of Santa Clara,

17  307 F.3d 1119, 1124 (9th Cir. 2002). In this case the court takes

18  judicial notice of the various recorded documents under Fed. R.

19  Evid. 201. Where these documents contradict the complaint's

20  allegations the court does not accept the allegations as true. See

21  Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir.

22  1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.

23  1987). The various other documents, which defendants ask the court

24  to consider under Branch, are not necessary to the court's

25  resolution of this motion. The court therefore disregards them.

26  ////

## II. BACKGROUND

### A. Procedural History

Plaintiffs filed suit in state court on June 1, 2009, asserting solely state law claims. Plaintiffs concurrently applied for a temporary restraining order. The state court issued a TRO on June 22, 2009 preventing defendants from assigning or transferring the subject real property pending this litigation.

On August 28, 2009, plaintiffs amended their state court complaint, adding claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). The amended complaint also asserted seven state law causes of action, for breach of contract, negligence, breach of the implied covenant of good faith and fair dealing, violation of Cal. Bus. & Prof. Code § 17200, violations of Cal. Civ. Code §§ 2924b and 2924f, wrongful foreclosure, and violation of the California Rosenthal Act.

Defendants Saxon Mortgage, Inc., Saxon Mortgage Services, Inc., and Deutsche Bank Trust Company Americas (hereinafter "defendants") timely removed to federal court. A fourth party, Old Republic National Title Insurance Co., is named in the complaint, but all parties agree that Old Republic is merely a nominal party with no possible liability. Defendants then moved to dismiss.

In an order filed February 12, 2010, the court denied the motion to dismiss as to plaintiffs' RESPA claim and plaintiffs' unfair competition claim insofar as the latter was predicated on a violation of RESPA. <u>Falcocchia v. Saxon Mortg., Inc.</u>, ___ F.

1 Supp. 2d ___, 2010 WL 582059, 2010 U.S. Dist. LEXIS 20536.  The

2 court otherwise granted the motion.

3 Plaintiffs filed an amended complaint on March 5, 2010.

4 Although the court had previously referred to the August 28, 2009

5 complaint as the "first amended complaint," plaintiffs confusingly

6 labeled the March 5 complaint as the "first amended complaint,"

7 perhaps because it was the first amendment to be filed in federal

8 court.  The March 5 complaint omits the Rosenthal Act claim, but

9 re-pleads all other claims.

10 Defendants again move to dismiss all claims.  Their motion

11 follows plaintiffs' labeling.  The court therefore again refers to

12 the operative complaint as the "first amended complaint" or "FAC"

13 despite the resulting potential for confusion.

14 **B.   Factual Background**[1]

15 **1.   The Loan at Issue**

16 On or about July 12, 2006, Greg Roh (who is not party to this

17 suit) approached plaintiffs soliciting refinancing of a loan

18 currently secured by plaintiffs' property in Yuba City, California.

19 FAC ¶ 30.  Roh, a mortgage broker, informed plaintiffs that a

20 mortgage from defendants Saxon Mortgage and Saxon Mortgage Services

21 would give them the "best deal" and "best interest rates" available

22 on the market.  Id.

23 Plaintiffs decided to borrow $408,000.  Id., Defs.' Request

24

25 [1] These facts are taken from the allegations in the complaint
filed March 5, 2010 (the "FAC") unless otherwise specified.  The
26 allegations are taken as true for purposes of this motion only.

5

1  for Judicial Notice filed April 9, 2010 ("RFJN") Ex. 2. This

2  amount included the $301,750.00 balance on plaintiffs' existing

3  home loan and roughly an additional $100,000. Def.'s RFJN Ex. 1.

4  On the day Roh approached plaintiffs, July 12, 2006, plaintiffs

5  signed a deed of trust offering their Yuba City home as security

6  for this loan. FAC ¶ 35. This deed of trust was properly

7  recorded. FAC ¶ 36. The deed of trust identifies the plaintiffs

8  as borrowers, Saxon Mortgage as lender, and First American Title

9  as trustee. Defs.' RFJN Ex. 2, see also FAC ¶ 52 (identifying

10 Saxon Mortgage as the lender). It appears that Saxon Mortgage

11 Services was the servicer of the loan.

12      Plaintiffs argue that the loan transaction was procedurally

13 defective, in that plaintiffs did not receive (1) signed loan

14 documents at the time of closing or within a reasonable amount of

15 time after signing, FAC ¶ 32, (2) disclosure of "amount financed"

16 and "finance charge," FAC ¶ 54 and (3) a completed notice of right

17 to cancel indicating the date that the right expires, FAC ¶ 32.

18 Plaintiff further argue that they did not receive the loan

19 documents prior to closing (although it is unclear when that would

20 have been) or time to review these documents at closing. FAC ¶ 32.

21      In addition to these alleged omissions, plaintiffs allege that

22 Roh affirmatively misrepresented plaintiffs' income on the loan

23 documents and that Roh similarly misinformed plaintiffs that they

24 would have an option to refinance the loan if it ever became

25 unaffordable. FAC ¶ 31.

26 ////

### 2.   Events Subsequent to Refinancing

Plaintiffs assert that "within six months of executing the promissory note, defendants . . . adjusted the interest rate . . . to over 10.175%." Pls.' Opp'n at 3.[2]

Defendants contend that plaintiffs first defaulted on the loan at around that time, on January 1, 2007. Plaintiffs concede that they defaulted, although it is unclear whether plaintiffs agree with this date.[3] Defendant issued three notices of default, each followed by a notice of trustee's sale. The first two were rescinded, and are not at issue here. Plaintiffs represent that during this time, they were in negotiations with defendants Saxon Mortgage and Saxon Mortgage Services.[4]

During this time--on April 18, 2007--Saxon Mortgage assigned its beneficial interest under the promissory note and deed of trust to defendant Deutsche Bank Trust Company Americas. Defs.' RFJN Ex. 4 (recorded notice of assignment). Pursuant to this assignment, Saxon Mortgage Servicing remained the "attorney-in-fact" for the

---

[2] Although this allegation does not appear in the FAC, the court includes it here because it pertains to plaintiffs' ability to show equitable tolling or estoppel.

[3] Defendants cite a notice of default recorded on April 23, 2007 in purported support of the Jan. 1, 2007 date. Defs.' RFJN Ex. 3. This notice of default asserts that plaintiffs were in default at that time. While the court takes judicial notice of the fact that the document was filed and of its contents, this notice does not extend to the purported truth of representations contained therein.

[4] The court notes that once Saxon Mortgage assigned its interest in the deed of trust, it is not clear what authority Saxon Mortgage would have had to conduct such negotiations.

7

1   beneficiary, which the court understands to mean that Saxon

2   Mortgage Servicing continued to service the loan.   Id.

3       Well after Saxon Mortgage has assigned its interest, on May

4   13, 2008, the third notice of default was recorded.   FAC ¶ 38,

5   Defs.' RFJN Ex. 10.[5]   This notice of default was issued by Old

6   Republic Default Management Services, who had not previously been

7   involved in the loan. FAC ¶ 38, Defs.' RFJN Ex. 10. A year later,

8   on May 14, 2009, Old Republic recorded a document substituting Old

9   Republic for First American Title as trustee.   Defs.' RFJN Ex. 11.[6]

10  Old Republic also recorded a third notice of trustee's sale.

11  Defs.' RFJN Ex. 12.   The trustee's sale was set for June 2, 2009.

12  Id., FAC ¶ 41.

13      Plaintiffs argue that May 13, 2008 notice of default and

14  subsequent notice of trustee sale should have been mailed to

15  plaintiffs' "legal mailing address," but that they were not,

16  despite defendants' knowledge of this address.   FAC ¶¶ 39, 40, 43.

17      After receiving notice of the scheduled June 2, 2009 trustee's

18  sale, plaintiffs sent letters to defendants stating plaintiffs'

19  intent to seek a temporary restraining order to enjoin the

20  foreclosure sale, demanding immediate cancellation of the

21  foreclosure sale, and demanding that defendant Old Republic Default

22  Management Services immediately stay all further action and comply

23  _____

24      [5] Defendants state that this notice was recorded on May 14,
    2009.

25      [6] The substitution of trustee bears a notarized signature
26  dated Jan. 21, 2009, but the document was apparently recorded on
    the above date.

1 with California Civil Code section 2924.  FAC ¶ 45.  Defendants
2 did not respond.

3     Plaintiffs also sent a separate letter to Saxon Mortgage and
4 Saxon Mortgage Services which "demand[ed] to cancel the
5 foreclosure sale under the . . . Deed of Trust [and] to rescind the
6 loan for various violations under [TILA]" FAC ¶ 46.  Plaintiffs
7 assert that this letter constituted a "qualified written request"
8 ("QWR") under RESPA.  Id.  Although the FAC does not specify when
9 this letter was sent, plaintiff's opposition states that it was
10 sent March 26, 2008.  Opp'n, 3.[7]  Saxon Mortgage and Saxon Mortgage
11 Services did not respond.  FAC ¶ 47

12     After the third notice of trustee sale was recorded on May 14,
13 2009, defendants refused to postpone this sale. On June 1, 2009,
14 plaintiffs filed a complaint in state court.

15 **III. ANALYSIS**

16     The operative complaint presents federal claims under TILA
17 and RESPA.  The court denies the motion to dismiss as to the
18 TILA damages claim for failure to respond to a notice of
19 rescission.  Because a federal claim remains, the court
20 continues to exercise supplemental jurisdiction over the six
21 state law claims pursuant to 28 U.S.C. § 1367.

22 **A.   TILA**

23     Plaintiffs bring claims for civil damages and for

24 _____

25     [7] Plaintiffs confusingly allege that this letter was sent
prior to the recording of the third notices of default and
26 trustee's sale, but plaintiffs also imply that this letter was sent
in response to these notices.  Compare FAC ¶ 46 with Opp'n, 3.

1  rescission under TILA.  As the court previously explained, these

2  two remedies are governed by distinct statutory frameworks.[8]

3      **1.  Rescission**

4      TILA provides a right to rescind a loan.  15 U.S.C. §

5  1635(a)-(b).  A borrower may rescind merely because of "buyer's

6  remorse."  Hefferman v. Bitton, 882 F.2d 379, 383 (9th Cir.

7  1989).  Thus, rescission need not be predicated on any mistake,

8  misunderstanding, or misconduct.

9      Ordinarily a borrower must rescind within three days of the

10  initial transaction.  Where the borrower does not receive notice

11  of the right to cancel, however, the period for rescission

12  extends to three years.  15 U.S.C. § 1635(f), Hefferman, 882

13  F.2d at 383.  For purposes of this motion, defendants concede

14  that this notice was not provided, such that the three year

15  period applies here.  Def.'s Reply at 5.  The parties agree that

16  this period expired on July 12, 2009.

17      The court previously held that this period was a

18  jurisdictional statute of repose to which neither tolling nor

19  estoppel could apply.  Order filed Feb. 12, 2010 at 11-13

20  (citing Miquel v. Country Funding Corp, 309 F.3d 1161, 1164 (9th

21  Cir. 2002) and Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412

22  (1998)).  Plaintiffs sought to rescind their loan prior to July

23  12, 2009, but they did not bring a judicial action seeking

24

25     [8] The court must confess that it is difficult to rationalize the court's rulings since, judging by the parties' previous conduct, it is not at all clear that they bothered to read the court's previous order.

26

10

rescission until after that time.  This court held that the
rescission claim was therefore untimely, although the court
noted that plaintiffs could perhaps assert a civil damages claim
for failure to respond to the initial rescission notice.  Id. at
13.

Despite the prior ruling, plaintiffs have re-pled their
TILA rescission claim, but plaintiffs have not alleged any
additional facts that would cause the claim to fare better this
time around.  Even more curiously, although defendants
previously succeeded by arguing that this claim was untimely,
defendants make no such assertion in their present motion.

Seeing no reason to revisit the prior decision, the court
hold that the TILA rescission claim is untimely.  Because
plaintiffs have previously been warned about this defect and
failed to remedy it, dismissal of this claim is with prejudice.

**2.   Civil Damages**

Claims for damages under TILA are governed by a separate
framework.  Plaintiffs assert four theories of TILA liability.
Defendants argue that these theories are untimely and meritless.
As to timeliness, as explained in the prior order, TILA provides
a one year statute of limitations for civil damages claims,
although this period may be subject to equitable tolling or
estoppel.  15 U.S.C. § 1640(e), King v. California, 784 F.2d
910, 914 (9th Cir. 1986).  When a defendant files a Fed. R. Civ.
P. 12(b)(6) motion to dismiss a claim as untimely but the
applicable statute of limitations is one subject to tolling or

1   estoppel, the court must deny the motion where "the complaint,

2   liberally construed in light of our 'notice pleading' system,

3   adequately alleges facts showing the potential applicability of

4   the equitable tolling doctrine." <u>Cervantes v. City of San</u>

5   <u>Diego</u>, 5 F.3d 1273, 1277 (9th Cir. 1993).

6       With this background, the court discusses the four theories

7   individually.

8               **a.    TILA Damages Claim for Failure to Respond to**

9                       **Rescission Notice**

10      Plaintiffs allege that they sent a timely notice of

11  rescission and that defendants improperly failed to respond to

12  this notice.  FAC ¶ 111; <u>see also</u> 15 U.S.C. §§ 1635(g), 1640(a).

13  Although a judicial claim for rescission must be filed within

14  three years of the initial transaction, a damages claim for

15  failure to respond to a rescission notice can be filed within

16  one year of the alleged failure, regardless of whether this

17  falls outside of the three year period for rescission itself.

18  Order at 13.  It appears that at least one request to rescind

19  was sent in May of 2009, three months before plaintiffs first

20  alleged a TILA violation and less than a year before the present

21  complaint was filed.  Accordingly, this claim is not time

22  barred.

23      Defendants raise two other challenges to this theory of

24  liability.  First, they argue that the exhibits before the court

25  demonstrate that plaintiffs received all required disclosures

26  *except* the notice of the right to rescind.  Reply at 5.

1   Defendants contend that failure to inform plaintiffs of the

2   right to rescind merely extended the "statute of limitations" in

3   which plaintiffs could seek rescission on the basis of some

4   other misconduct.  Defendants mischaracterize TILA.  As

5   explained above, section 1635(a) is a "buyer's remorse"

6   provision, such that rescission need not be predicated on a TILA

7   violation.[9]

8        Defendants' second argument is that this claim fails

9   because plaintiffs have failed to allege an ability to tender

10  the loan proceeds.  Under TILA's default rescission procedure, a

11  borrower must tender the loan proceeds, minus certain amounts,

12  *after* the lender has cancelled any security interest and

13  returned any money and property (such as earnest money) to the

14  borrower.  15 U.S.C. § 1635(b).  TILA grants courts authority to

15  modify this procedure, and the Ninth Circuit has held that

16  courts generally should require tender as a prerequisite to

17  rescission.  Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1172 (9th

18  Cir. 2003).  Defendant has identified no authority, however,

19  suggesting that the initial notice of rescission was required to

20  allege an ability to tender the loan proceeds or that a borrower

21  was free to ignore an otherwise proper rescission notice lacking

22  such an allegation.  Indeed, this court has held that a

23  complaint in a judicial action for rescission need not contain

24  any such allegation, because the decision under Yamamoto of when

25  _____

26       [9] The court does not decide whether these other disclosures
    were in fact made.

                              13

to require tender is better made at the time of summary

judgment.  <u>Baldain v. Am. Home Mortg. Servicing, Inc.</u>, No. CIV.

S-09-0931, 2010 U.S. Dist. LEXIS 5671, *32 (E.D. Cal. Jan. 5,

2010).  Accordingly, the fact that plaintiffs have not alleged

an ability to tender the loan proceeds does not bar plaintiffs

from bringing a damages claim for failure to respond to the

notice of rescission.[10]

### b.   TILA Damages Claims Arising from The Initial Transaction

Plaintiffs' TILA damages claim also asserts three theories

of liability arising from the initial transaction.  Only the

first theory was raised in plaintiffs' prior complaint.

Plaintiffs allege that defendants failed to make disclosures or

provide documents at the loan's origination.  The limitations

period for a claim based on these omissions would normally have

expired on July 12, 2007.  Plaintiffs first filed a TILA damages

claim on August 28, 2009.  In the prior order, the court held

that because plaintiffs were necessarily able to determine which

documents they did and did not receive, plaintiffs had not shown

a possibility of equitable tolling or estoppel.  Order at 9.

The claim was therefore untimely.  <u>Id.</u>  In the operative

---

[10] The parties have not addressed whether a lender is obliged to respond a notice of rescission even if the borrower does not have a right to rescind.  Because the court holds that plaintiffs have alleged facts supporting a right to rescind, the court does not reach this issue.

complaint plaintiffs re-plead this claim,[11] but provide no added

allegations or theory as to why plaintiffs were unaware of these

failures at the time of the initial transaction or as to

plaintiffs' inability to bring suit at that time.  For the

reasons explained in the prior order, the claim is untimely

insofar as it is based on these allegations.

Second, plaintiffs now allege that defendants "provid[ed]

inaccurate information . . . relating to the terms of the loan

[and] . . . misrepresent[ed] . . . finance charge details and

the annual percentage rate."  FAC ¶ 109.  This court has

previously held that allegations of inaccurate information may

demonstrate a *possibility* of tolling for the period of time in

which the borrower could not have discovered the inaccuracy

despite the exercise of reasonable diligence, and thereby defeat

a motion to dismiss.  See Champlaie v. BAC Home Loans Servicing,

LP, No. S-09-1316, 2009 U.S. Dist. LEXIS 102285, *52-*53, 2009

WL 3429622, *17 (E.D. Cal. Oct. 22, 2009).  Here, however, any

inaccuracies excuse at most six months of delay, which is

insufficient to render the claim timely.  Plaintiffs assert that

the annual percentage rate unexpectedly increased within six

months of the initial transaction.  Plaintiffs were on notice of

---

[11] Plaintiffs allege that defendants violated TILA by "failing
to provide the required disclosures . . . failing to make required
disclosures clearly and conspicuously in writing; failing to timely
deliver . . . certain notices required by statute; placing terms
prohibited by statute into the transaction; . . . failing to
disclose all finance charge details and the annual percentage rate
based upon properly calculated and disclosed finance charges and
amounts financed."  FAC ¶ 109.

the alleged misrepresentations at that time.  Plaintiffs have
not demonstrated a "possibility" that the claim based on such
misrepresentation filed two and a half years later was timely.

Third, plaintiffs allege that defendants extended credit to
plaintiffs without regard to plaintiffs' ability to pay,
pursuant to a broader pattern or practice.  FAC ¶ 110, see also
15 U.S.C. § 1639(h).  It is at least possible that plaintiffs
could not discover the basis for this claim until plaintiffs
learned the terms of the loan they received and thus the size of
plaintiffs' obligation.  As noted in the previous paragraph,
however, at the very least, plaintiffs were obliged to
diligently investigate these terms once their interest rate
spiked around early 2007.  Although plaintiffs might not have
known all the information necessary to ultimately prove their
claim at that time, plaintiffs' own assertions demonstrate that
they had "the information necessary to bring suit." Lien Huynh
v. Chase Manhattan Bank, 465 F.3d 992, 1004 (9th Cir. 2006).  As
such, plaintiffs have not shown a possibility of equitable
tolling for a TILA claim based on lending without regard to
ability to repay.  Id.

Accordingly, plaintiffs' TILA claim is dismissed except
insofar as it seeks civil damages for defendants' failure to
respond to a notice of rescission.  This is plaintiffs' second
attempt to plead this claim, yet plaintiffs have failed to cure
the previously identified defects.  To the extent that this
claim is dismissed, dismissal is with prejudice.

**B.    Real Estate Settlement Procedures Act**

Plaintiffs claim that Saxon Mortgage and Saxon Mortgage Services violated RESPA by failing to respond to a qualified written request as required by 12 U.S.C. § 2605(e)(2).   FAC ¶ 118.  Plaintiffs further allege that defendants have a pattern and practice of such violations.  FAC ¶ 119.  Defendants previously argued that this claim was untimely because it was brought more than three years beyond the initial transaction. The court held that the statute of limitations runs from the time defendants failed to respond to the QWR and that the claim was therefore brought within the limitations period.  Order at 14-15.

Defendants now argue that the RESPA claim should be dismissed because plaintiffs have not alleged facts sufficient to support the conclusion that plaintiffs sent a QWR to defendants.  RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Plaintiffs allege that they sent a "QWR" to defendants that "demand[ed] to cancel the foreclosure sale under the . . . Deed of Trust [and] to rescind the loan for various violations under [TILA]."  FAC ¶ 46.

17

1 Plaintiffs make no other allegations regarding the content of

2 this purported QWR, nor have plaintiffs provided a copy of the

3 letter.  Plaintiffs have not alleged that they ever sent a

4 request for information.  Nor do any of the alleged TILA

5 violations amount to a statement that "the account [was] in

6 error."  Accordingly, this claim is dismissed.  Because this

7 defect was not previously addressed by the court, dismissal is

8 without prejudice.

9 **C.   Contract Claims**

10    Plaintiffs' first cause of action is labeled as an action

11 for breach of contract or for rescission of contract.[12]  The

12 court discusses these two theories separately.  Plaintiffs also

13 bring a claim for breach of the implied covenant of good faith

14 and fair dealing.

15    **1.   Breach of Contract**

16    Plaintiffs allege that the Saxon defendants, acting through

17 the mortgage broker Roh, contracted to "assist Plaintiffs in

18 obtaining a mortgage loan and to provide Plaintiffs with a loan

19 commitment under various said affordable terms which were to be

20 set out in a promissory note."  FAC ¶ 65.  "Plaintiffs agreed to

21

22    [12] In the prior motion, plaintiffs stated their non-opposition
to dismissal of this claim and did not request leave to amend.
23 Absent such a request, the court dismissed this claim with
prejudice.   Plaintiff  was  not  warned  of  this  possibility
24 beforehand.  Insofar as plaintiff has sought to replead this claim,
the conclusion that plaintiff had abandoned it was premature.
25 Defendants have not argued that the previous dismissal with
prejudice  prohibits  plaintiffs  from  repleading  this  claim.
26 Plaintiff affirmatively opposes dismissal in the instant motion.

1  pay mortgage Broker Greg Roh a commission for his services and

2  pay [the Saxon defendants] substantial loan origination fees and

3  commissions for their services." Id.

4       Defendants allegedly breached this contract by "making

5  false representations . . . regarding material facts relating to

6  mortgage payments, the availability of refinancing, and

7  Plaintiffs' qualification for the loan, by their failure to

8  exercise reasonable efforts and due diligence as promised; and,

9  by failing to secure a loan with the promised payment and

10  interest rate." FAC ¶ 66.

11       Defendants raise two arguments for dismissal of this claim.

12  First, they argue that this claim alleges an oral contract

13  concerning property, whereas such contracts must be in writing.[13]

14  Insofar as plaintiffs merely allege a contract regarding future

15  negotiations, defendants have not met their burden of

16  demonstrating that this contract falls within the statute of

17  frauds. Second, they argue that this claim is actually a claim

18  for breach of fiduciary duty and that such a claim cannot lie

19  against a lender. Defendants' characterization of the claim is

20  not supported by the allegations in the complaint.[14]

21  _____

22       [13] Defendants actually argue that the court previously
    dismissed this claim on this ground. The court dismissed the claim

23  because "Plaintiffs concede that the oral contract claim
    must be dismissed," without discussing the merits of the issue.

24  Order at 22.

25       [14] Confusingly, plaintiffs' opposition does not argue that
    defendants have mischaracterized this claim. Plaintiffs instead
    argue that defendants did owe fiduciary duty. Opp'n 17. The court

26  does not reach this contention. If plaintiffs wish to state a

1   Having rejected defendants' arguments, the court

2   acknowledges that plaintiffs may be unable to show that any

3   agreement prior to the loan itself existed, that the Saxon

4   defendants were party to this agreement, that the Saxon

5   defendants had any obligations under this agreement (as opposed

6   to their obligations under the actual loan), or that the Saxon

7   defendants breached any such obligations.  Because defendants

8   did not raise these issues the court does not address them.

9   Accordingly, the motion to dismiss the breach of contract

10  claim is denied.

11  **2.   Breach of the Implied Covenant of Good Faith and Fair**

12  **Dealing**

13  It is unclear whether plaintiffs' claim for breach of the

14  implied covenant of good faith and fair dealing is predicated on

15  the alleged initial contract discussed above or instead on the

16  promissory note and loan itself.  Plaintiffs treat this claim as

17  a catch-all for all alleged wrongdoing by defendants, arguing

18  that defendants breached this duty by, in plaintiffs' words:

19  a.   Failing to pay at least as much regard to
         Plaintiffs' interests as to Defendants'
20       interests

21  b.   Failing to disclose to Plaintiffs the true
         nature of the loan that is the subject of
22       this action;

23  c.   Failing to give Plaintiffs the requisite
         notice and disclosures.

24

25  claim for breach of fiduciary duty, plaintiffs should seek leave
    to amend to do so.  Defendants' present opposition, however,
26  identifies many of the difficulties facing such a claim.

d.    Directing Plaintiffs into a toxic loan.

e.    Depriving Plaintiffs of the promised payment and interest rate on the loan;

f.    Initiating foreclosure proceedings on the subject property although they did not have the right to do so;

g.    Failing to give proper legal notice before commencing disclosure;

h.    and, authorizing the reporting to various credit bureaus wrongfully known that such wrongful reporting would cause derogatory information to ruin the Plaintiffs' credit;

[i].  "[falsely representing that plaintiffs could get the 'best deal" and "the best interest rates."]

[j].  "failing to comply with all applicable laws."

FAC ¶¶ 78-79.

Insofar as plaintiffs claim a *tortious* breach of the implied covenant, the claim fails because plaintiffs have not alleged the requisite special relationship, such as that between an insurer and the insured.   <u>Kim v. Sumitomo Bank</u>, 17 Cal. App. 4th 974, 979 (1993) (citing <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1399, n.25 (1990)).   Absent such a relationship, the implied covenant did not oblige defendants to "pay at least as much regard to Plaintiffs' interests as to Defendants' interests."   Because a special relationship is only necessary for enforcement of such an obligation or for recovery of damages, the absence of a special relationship is irrelevant to the remaining allegations insofar as they seek contract damages.

1    Defendants alternatively argue that this claim fails
2 because the covenant is predicated on the existence of an oral
3 agreement prior to the loan itself.  As explained above, the
4 court does not dismiss the allegation of such an agreement.
5 Moreover, it appears that the loan itself is a contract that
6 carries with it an implied covenant.

7    Again, having rejected the only arguments raised by
8 defendants, the court denies the motion to dismiss this claim
9 without discussing whether the claim is otherwise proper.

10    **3.   Contractual Rescission**

11    Plaintiffs alternatively allege that "no contract existed
12 between Plaintiffs and [the Saxon defendants] because of mutual
13 mistake relating to the basic or material contractual terms."
14 FAC ¶ 69.  Plaintiffs apparently seek to void the loan itself,
15 rather than any preliminary contract.

16    Defendants' sole argument for dismissal of this claim is
17 that rescission under state law requires tender of the benefits
18 the rescinding party has received under the contract, but that
19 plaintiffs have not alleged an ability to make tender.  Under
20 California law a credible tender offer is a prerequisite to a
21 rescission claim.  <u>Yulaeva v. Greenpoint Mortg. Funding, Inc.</u>,
22 2009 U.S. Dist. LEXIS 79094, *23 (E.D. Cal. Sept. 3, 2009)
23 (Karlton, J.).  In the TILA context, the undersigned has
24 explained that the tender may in some circumstances that result
25 may be made possible by refinancing of the loan, which may in
26 turn only be possible once rescission has occurred.  <u>Baldain v.</u>

1  <u>Am. Home Mortg. Servicing, Inc.</u>, 2010 U.S. Dist. LEXIS 5671,

2  *28-*32 (E.D. Cal. Jan. 5, 2010).  It appears that such

3  refinancing may be part of an offer to tender under California

4  law.  Insofar as plaintiffs have stated their intent to tender,

5  defendants will need to wait until summary judgment to challenge

6  whether plaintiffs have any evidence to demonstrate the

7  credibility of this offer.  It does not appear that plaintiffs

8  must demonstrate immediate ability to tender, whether through

9  refinancing or otherwise, at the pleading stage.[15]

10  **D.   Negligence**

11       Plaintiffs' prior complaint alleged that defendants were

12  negligent in "(1) directing plaintiffs into a loan they were not

13  qualified for, . . . and (2) taking payments to which they were

14  not entitled, charging fees they were not entitled to charge and

15  making or otherwise authorizing reporting to various credit

16  bureaus wrongfully."  Order at 16 (modifications omitted).  The

17  court dismissed this claim in part on the ground that defendants

18  did not owe an applicable duty to plaintiffs and in part because

19  plaintiffs had not alleged a breach of any applicable duty.  <u>Id.</u>

20  at 16-17.

21       Plaintiffs' current complaint abandons these theories of

22  negligence, and is instead predicated solely on the failure to

23  make the disclosures required by TILA.  FAC ¶¶ 72-73.  This

24  ────────────

25       [15] Of course, for the reasons stated in <u>Yamamoto v. Bank of
    N.Y.</u>, 329 F. 3d 1167 (9th Cir. 2003) the court will not rescind the
    contract on the mere *hope* that plaintiffs will be able to make

26  tender, through refinancing or otherwise.

1  court has previously held that as a matter of state law, failure

2  to make these disclosures *may* support a claim for negligence.

3  Champlaie, 2009 U.S. Dist. LEXIS 102285, *75.

4      Defendants argue that this claim should be dismissed as

5  untimely.  Without citation to authority, defendants assert that

6  "Because Plaintiffs base this claim on requirements under

7  federal substantive law, namely TILA, it follows that the

8  Statute of Limitations from TILA controls."  Mem. at 16.

9      The issue is not as straightforward as defendants assume.

10  The Ninth Circuit has held that states' ability to effectively

11  extend federal statutes of limitations is a question of

12  preemption.  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001 (9th

13  Cir. 2008).  TILA itself does not preempt plaintiffs' negligence

14  claim, because TILA contains a broad savings clause.  15 U.S.C.

15  § 1610(b), Silvas, 514 F.3d at 1007.  TILA's savings clause

16  nonetheless does not limit the preemptive effect of other

17  federal law.  Silvas, 514 F.3d at 1007.  To the contrary, Silvas

18  held that a regulation issued by the Office of Thrift

19  Supervision pursuant to the Home Owners' Loan Act ("HOLA"), 12

20  C.F.R. § 560.2, may preempt state law claims predicated on TILA

21  violations.  Id. at 1004; see also Casey v. FDIC, 583 F.3d 586,

22  593 (8th Cir. 2009), State Farm Bank, FSB v. Reardon, 539 F.3d

23  336, 344 (6th Cir. 2008), Flagg v. Yonkers Sav. & Loan Ass'n,

24  FA, 396 F.3d 178, 182-84 (1st Cir. 2005).

25      The OTS regulation at issue in Silvas "occupies the entire

26  field of lending regulation for *federal savings associations*."

1  12 C.F.R. § 560.2 (emphasis added).  Such associations are those

2  chartered under HOLA § 5(o), 12 U.S.C. § 1464(o).  <u>See</u> 12 C.F.R.

3  §§ 541.2, 541.11.  A defendant must demonstrate that it is such

4  an entity before the defendant may benefit from the preemption

5  defense recognized by <u>Silvas</u>.  <u>Yang v. Home Loan Funding, Inc.</u>,

6  No. CV F 07-1454, 2010 U.S. Dist. LEXIS 21837, *20-*24 (E.D.

7  Cal. Feb. 18, 2010) (Ishii, J.) (denying a motion to dismiss in

8  part because, in essence, defendant had not shown that it was a

9  federal savings association), <u>Ibarra v. Loan City</u>, No.

10 09-CV-02228, 2010 U.S. Dist. LEXIS 6583, *13 (S.D. Cal. Jan. 27,

11 2010) (beginning the preemption analysis by noting that

12 defendant had shown that it was a federally regulated savings

13 association).

14      Here, defendants have not offered any argument or evidence

15 as to the threshold question of whether they are federal savings

16 associations.  Nor have defendants raised any other arguments

17 for dismissal of this claim.  Because defendants bear all

18 applicable burdens on their motion to dismiss, the motion is

19 denied as to plaintiffs' negligence claim.[16]

20 **E.    Violations of California Civil Code §§ 2924b and 2924f**

21      Plaintiffs' fifth cause of action argues that all

22 defendants violated California Civil Code sections 2924b and

23 2924f by failing to send the notices of default, trustee's sale,

24

25      [16] The court does not decide whether, if defendants had shown
   that they were federal savings associations, the negligence claim
26 would be preempted.

1  and substitution of trustee to the plaintiffs' "legal mailing

2  address."  FAC ¶¶ 87-90.  The court dismissed this claim because

3  plaintiffs had not alleged that they failed to receive these

4  documents or that such receipt was delayed; thus, it appeared

5  that any violation was harmless.  Order at 18.

6      Plaintiffs now allege that they "failed to receive the

7  notices in a timely manner and such failure . . . caused an

8  undue delay . . . whereby Plaintiffs lost an opportunity to have

9  initially taken preventive action to avoid the foreclosure

10 sale."  FAC ¶ 90.  Defendants argue that this allegation is

11 inadequate in that it fails to specify what action plaintiffs

12 would have taken.  Defendants make no other argument for

13 dismissal of this claim.

14     It does not appear that such allegations are required in

15 the complaint itself.  Plaintiffs respond, in their opposition

16 memorandum, that such actions "would have included an attempted

17 loan refinance at a lower interest rate, a short sale, or a loan

18 modification with the existing Defendant lenders."  Opp'n at 22.

19 It appears unlikely that defendants would have agreed to

20 refinance or modify the loan had only plaintiffs made such

21 request a few days earlier.  At the very least, however, it is a

22 reasonable inference that a short sale or refinancing through

23 another lender was an available "preventative action" that would

24 have been facilitated by earlier receipt of notice.  Such a

25 reasonable inference suffices at this stage of the proceedings.

26 ////

**F.    Wrongful Foreclosure**

Plaintiffs allege that the threatened foreclosure is wrongful because (1) defendant Old Republic National Title Insurance Co., who recorded the notices of default and trustee's sale, was not authorized to act on defendants' behalf, FAC ¶ 98; (2) the notices were not properly sent to plaintiffs, FAC ¶ 98 and FAC ¶¶ 87-90; (3) plaintiffs' notice of rescission deprived defendants of the right to foreclose, FAC ¶¶ 99-100; (4) defendants failed to respond to the qualified written request under RESPA, FAC ¶¶ 99-100; and (5) "Defendants have failed to suspend the foreclosure action to allow for consideration of other options," FAC ¶ 102.

Defendants make two arguments for dismissal.  First, they argue that because the RESPA claim fails, failure to respond to the QWR cannot support a claim for wrongful foreclosure.  The court agrees.  Moreover, as the prior order explained, because RESPA does not provide for injunctive relief, RESPA cannot serve as the basis for a wrongful foreclosure claim.  Order at 20. Second, defendants argue that plaintiffs' allegation regarding consideration of alternative foreclosure options is contradicted by plaintiff John Falcochia's own declaration submitted to state court prior to removal.  He declares "since May, 2008[] I have been working with the Loss Mitigation Department at Saxon Mortgage Incorp. and have attempted to obtain a loan modification with Saxon and defer outstanding interest payments owed so as to avoid the loss of the subject property."  June 1,

1   2009 Decl. of John J. Falcocchia ISO Ex Parte Application for

2   TRO, ¶ 4.  In opposing this motion, plaintiffs do not dispute

3   that such negotiations occurred and accounted for the year delay

4   between the third notice of default and the third notice of

5   trustee's sale.  Thus, this theory fails.

6        Although the court dismisses these two bases for the

7   wrongful foreclosure claim, defendants have not addressed the

8   other three alleged bases.  Accordingly, this claim survives in

9   part.

10  **G.    Violations of California Business and Professions Code Sec.**

11      **17200**

12       California's Unfair Competition Law, Cal. Bus. & Prof. Code

13  § 17200, ("UCL") proscribes "unlawful, unfair or fraudulent"

14  business acts and practices.  "Unlawful" conduct is that

15  prohibited by other law.  Here, the court denies the motion to

16  dismiss as to various other claims which provide the requisite

17  predicate unlawful conduct.[17]  Because the claim survives in this

18  regard and in light of the inadequacy of the parties' briefing,

19  the court does not decide whether plaintiffs have also

20  sufficiently alleged claims for unfair or fraudulent conduct.

21  _____

22       [17] Although  the  court  denies  defendants'  motion  as  to  the
    contract and good faith claims, contract claims cannot constitute
23  "unlawful" conduct for purposes of an unfair competition claim.
    See Boland, Inc. v. Rolf C. Hagen (USA) Corp., ___ F.Supp.2d. ___,
24  ____, 2010 WL 493422, *12, 2010 U.S. Dist. LEXIS 9567, *41 (E.D.
    Cal. Feb. 3, 2010) (citing Puentes v. Wells Fargo Home Mortgage,
25  Inc., 160 Cal. App. 4th 638, 645 (2008) and Smith v. Wells Fargo
    Bank, N.A., 135 Cal.App.4th 1463, 1484 (2005)).  The remaining
26  surviving claims provide the predicate unlawful activity.

**IV. Conclusion**

1     For the reasons stated above, defendants' motion to dismiss

2  (Dkt. No. 26) is GRANTED IN PART.  The court ORDERS as follows:

3     1.   Plaintiffs' TILA claim is DISMISSED WITH PREJUDICE

4          except insofar as this claim seeks damages for the

5          failure to respond to notice of rescission.

6     2.   Plaintiffs' RESPA claim is DISMISSED WITHOUT

7          PREJUDICE.

8     3.   Plaintiffs' wrongful foreclosure claim is DISMISSED

9          WITH PREJUDICE solely insofar as it is predicated on

10         violation of RESPA or the allegation that defendants

11         failed to suspend foreclosure activities to allow

12         negotiation of a loan modification.

13    4.   Defendants' motion to dismiss is otherwise DENIED.

14    Plaintiffs are granted 21 days to file an amended complaint

15 seeking to cure the above identified defects with plaintiffs'

16 RESPA claim.  Should plaintiffs seek to amend their complaint

17 for any other purposes, plaintiffs must move for leave to amend

18 under Fed. R. Civ. P. 15 and 16.  <u>See</u> Scheduling Order filed

19 Jan. 11, 2010.

20    Both parties are warned that evidence that a party failed

21 to read this order will result in sanctions.

22    IT IS SO ORDERED.

23    DATED:  May 27, 2010.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

29