UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN J. FALCOCCHIA and
RACHAEL D. FALCOCCHIA,

        Plaintiffs,

    v.

SAXON MORTGAGE, INC., et al.,

        Defendants.

NO. CIV. S-09-2700 LKK/GGH

O R D E R

    This case involves plaintiffs' mortgage. The court has previously granted in part two motions to dismiss. See Orders filed February 12 and May 27, 2010. After the second of these orders, plaintiffs filed a complaint the parties refer to as the second amended complaint ("SAC"). Defendants Saxon Mortgage, Inc., Saxon Mortgage Services, Ind., and Deutsche Bank Trust Company Americas collectively move to dismiss three claims in the SAC on the ground that these claims suffer from defects previously determined to warrant dismissal. The court resolves the motion on the papers and without oral argument. For the reasons stated below, defendants' motion is granted in part.

1

# I. Analysis[1]

Defendants move for dismissal of plaintiffs' claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), and for breach of the implied covenant of good faith and fair dealing.

## A. TILA, Plaintiffs' Eighth Claim

In the May 27, 2010 order, the court held that plaintiffs had stated a claim under TILA only for *damages* resulting from defendants' failure to respond to a notice of rescission. Plaintiffs' claim for rescission itself, as well as plaintiffs' claims for damages arising from other alleged misconduct, were untimely.

In the SAC, plaintiffs seek, as remedy for the alleged TILA violations:

> injunctive relief; an order requiring Defendants to take all actions in the expungement of any foreclosure instruments, including but not limited to any Notice of Default or Notice of Trustee's Sale, relating to the transaction from any public record; removal of any derogatory information reported to any credit reporting agency or credit reporting bureau relating to the transaction;

SAC ¶ 112, as well as:

---

[1] In the two prior orders referenced above, the court has provided detailed articulations of the facts in this case and the standards governing motions to dismiss under Fed. R. Civ. P. 12(b)(6). The facts alleged in the SAC are substantially similar, except as noted below. Accordingly, there is no need to re-articulate the background or the applicable standard here.

2

> declaratory and injunctive relief preventing Defendants from taking any action to collect on the loan, and/or to foreclose upon the property, and/or to transfer the property.

SAC ¶ 114. For the reasons previously explained, TILA does not entitle the plaintiffs here to any of these remedies.

Plaintiffs now argue that these allegations merely seek perpetuation of the preliminary injunction entered by the state court prior to removal of this case. Opp'n at 9. The continuing validity of that injunction, and the potential basis thereof, is not at issue in the present motion.

Although the court dismisses the TILA claim insofar as it seeks these remedies, the court declines to dismiss the remainder of the claim. Plaintiffs are cautioned, however, that future violation of the courts orders, including pleading of claims that have been dismissed with prejudice, will result in dismissal of this case as a sanction. E.D. Cal. Local Rule 110, Fed. R. Civ. P. 41(b).

**B.   RESPA, Plaintiffs' Ninth Claim**

The RESPA claim, as alleged in both the prior and operative complaints, alleges that defendants failed to respond to a "Qualified Written Request" ("QWR"). RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer

3

1           regarding other information sought by the
2           borrower.

3 12 U.S.C. § 2605(e)(1)(B). In the previous complaint, plaintiffs
4 alleged that they sent a letter that "demand[ed] to cancel the
5 foreclosure sale under the . . . Deed of Trust [and] to rescind the
6 loan for various violations under [TILA]." FAC ¶ 46. The court
7 rejected plaintiffs' assertion that such a letter, without more,
8 would constitute a QWR under RESPA. Order filed May 27, 2010, at
9 17-18.

10     The SAC alleges that this correspondence "sought . . . the
11 principal balance owed, the calculated monthly payment, calculated
12 escrow payment, and any fees claimed to be owed to the
13 defendants." SAC ¶ 46. Although defendants have requested
14 judicial notice of many documents, defendants have not presented
15 a copy of this letter. The court must conclude that the alleged
16 correspondence seeks information in accordance with 12 U.S.C. §
17 2065(e)(1)(B)(ii). Plaintiffs have therefore alleged that they
18 sent a QWR, curing the deficiency identified in the prior order.

19 **C. Breach of the Implied Covenant of Good Faith and Fair**
20     **Dealing, Plaintiffs' Third Claim**

21     The court previously observed that "[p]laintiffs treat this
22 claim as a catch-all for all alleged wrongdoing by defendants."
23 Order filed May 27, 2010, at 20. The court nonetheless denied
24 defendants' motion to dismiss this claim, with one exception. The
25 court dismissed plaintiffs' good faith claim insofar as plaintiffs
26 alleged a tortious breach of the implied covenant or that

4

defendants had an obligation to "pay at least as much regard to Plaintiffs' interests as to Defendants' interests." Id. at 21. Plaintiffs have re-pled these aspects of this claim, and defendants again move to dismiss them.[2]

Under California law, the obligation to pay as much heed to the other party's interests as to one's own and the availability of tort damages under a doctrine that otherwise sounds in contract both require the existence of a "special relationship." See, e.g., Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 979 (1993). Here, plaintiffs argue that a fiduciary duty is such a relationship, that the broker owed plaintiffs a fiduciary duty, and that defendants further owed such a duty because of their relationship with the brokers. Given that a fiduciary duty is itself enforceable without reference to the doctrine of good faith, it is unclear whether a fiduciary duty may support a claim for tortious breach of the implied covenant. The court does not reach this issue, because plaintiffs have not alleged facts supporting such a relationship here. Similarly, if the court were to construe the SAC as alleging a claim for breach of fiduciary duty, such a claim would be dismissed.

A loan broker owes the borrower a fiduciary duty under

---

[2] The May 27, 2010 order granted leave to amend only as to the RESPA claim. This was an error, resulting from the failure to acknowledge, in that portion of the order, that portions of the good faith claim were also dismissed on grounds not previously addressed by the court. Although plaintiffs should have called this error to the court's attention rather than merely violating the terms of the order and repleading the good faith claim, the court nonetheless considers these amended allegations.

5

California law. Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 476 (1989). A lender acting within "the scope of its conventional role as a mere lender of money," on the other hand, ordinarily does not even owe the borrower a duty of care sounding in negligence, much less a fiduciary duty. Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).

Plaintiffs allege that the lenders paid brokers higher commissions on loans that were disadvantageous to borrowers and that lenders trained brokers to sell such loans.[3] SAC ¶ 49. Plaintiffs further allege that defendants "failed to adequately supervise, train, and direct their employees," but plaintiffs' allegations do not support the conclusion that the brokers were themselves employees of the lender defendants. SAC ¶ 81. Plaintiffs selectively quote Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 785 (1979) to argue that this conduct extends the broker's fiduciary duty to the lender, because the lender "directly ordered, authorized, or participated in" the broker's tortious conduct. Wyatt held that "*[d]irectors and officers of a corporation . . . may* become liable [for a corporation's torts] if they directly ordered, authorized or participated in the tortious conduct." (emphasis added). "Neither Wyatt nor the authorities cited therein suggests that this rule imposes liability outside the relationship

---

[3] As with many other cases brought by borrowers, the plaintiffs here argue that defendants offered "greater commission or bonus for placing borrowers into loan with relatively higher yield spread premiums," but under industry usage, the yield spread premium is itself the commission. The court's phrasing captures plaintiffs' concern.

6

between a corporation and its officers." Champlaie v. BAC Home Loans Servicing, LP, ___ F. Supp. 2d ___, ___, 2009 WL 3429622, *19, 2009 U.S. Dist. LEXIS 102285, *60-61 (E.D. Cal. Oct. 22, 2009). California cases following Wyatt have further suggested that its rule is limited to this factual context. Doctors' Co. v. Superior Court, 49 Cal. 3d 39, 48 (1989), Filet Menu v. C.C.L. & G., Inc., 79 Cal. App. 4th 852, 866 (2000). Thus, assuming the truth of plaintiffs' allegation that the lenders trained, etc., the brokers, these allegations are insufficient to impose an otherwise-absent fiduciary duty on the lenders.

Plaintiffs further argue that the brokers' fiduciary duties extended to the lenders on principles of conspiracy or agency law. These arguments fail for the reasons explained in Champlaie. As to agency, there is no allegation that the brokers, the alleged agents, had the ability to bind the lenders, the alleged principal, or that the lenders took some act indicating that such a relationship existed. Accordingly, plaintiffs have not alleged facts sufficient to give rise to an agency relationship under California law. Cal. Civ. Code §§ 2295, 2299, 2300; J.L. v. Children's Institute, Inc., 177 Cal. App. 4th 388, 403-04 (2009). As to conspiracy, under California law an alleged conspirator can not be liable in civil conspiracy unless he personally owed the duty that was breached. Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511, 514 (1994).

This is not to say that the lenders' relationship with the brokers was not wrongful. Indeed, it may be that this relationship

7

was an unfair or fraudulent business practice. Such questions, however, are beyond the scope of the present motion. Here, the court determines that plaintiffs have again failed to demonstrate a "special relationship" giving rise to a heightened duty of good faith or tort liability on such a claim. Furthermore, construing the complaint as asserting a claim for breach of fiduciary duty, plaintiffs have failed to allege facts sufficient to support such a claim. Because this is plaintiffs' third complaint, and because the court has previously identified these deficiencies, the court dismisses this aspect of the claim with prejudice.

## II. Conclusion

For the reasons stated above, defendants' motion to dismiss (Dkt. No. 36) is GRANTED IN PART. The court DISMISSES plaintiffs' TILA claim only insofar as this claim seeks declaratory or injunctive relief. The court also DISMISSES plaintiffs' claim for breach of the implied covenant of good faith and fair dealing only insofar as this claim seeks tort damages or to impose a duty to "pay at least as much regard to Plaintiffs' interests as to Defendants' interests." Dismissal of these claims is WITH PREJUDICE. Defendants' motion is otherwise DENIED. At this point, the court does not require plaintiffs to file an amended complaint reflecting these changes.

IT IS SO ORDERED.

DATED: August 10, 2010.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

8